## Terre Haute & Ind. R. R. Co. v. David B. Crews et al.

1. PRINCIPAL AND AGENT—*Agent's Authority To Bind Principal—How Shown.*—To bind the principal by the acts of the agent, the right and authority to do the acts by which the principal is to be held, must be proven.

2. COMMON CARRIERS—*Railroad's Duty To Furnish Safe Cars.*—It is the duty of a railroad company to furnish to shippers safe and secure cars in which to carry freight delivered to it for transportation; an omission to perform this duty is negligence, creating liability to respond in damages to the shippers injured thereby.

**Memorandum.**—Action for damages to stock by negligence of a common carrier. Appeal from the County Court of Effingham County; the Hon. S. F. GILMORE, Judge, presiding. Heard in this court at the August term, 1893. Reversed and remanded. Opinion filed March 23, 1894.

The statement of facts is contained in the opinion of the court.

THOMAS J. GOLDEN and WOOD BROTHERS, attorneys for appellant.

R. C. HARRAH and B. OVERBECK, attorneys for appellees.

MR. JUSTICE GREEN DELIVERED THE OPINION OF THE COURT. This suit was brought by appellees to recover damages

T. H. & I. R. R. Co. v. Crews.

for breach of a contract of carriage, and resulted in a verdict and judgment for appellees for $250 and costs of suit.

The declaration consisted of four counts. The first two charged that appellees delivered to appellant, a common carrier, at Montrose, certain cattle, to be carried for appellees to Sells & Co., commission merchants at Indianapolis. That appellant loaded the cattle in unsafe cars, by reason of which part of the cattle broke out while in transit and were crippled and injured.

The last two counts set up substantially the same facts, with the additional allegations that the cattle were delivered at Montrose to be carried to Indianapolis, and delivered to M. Sells & Co., commission merchants, in time to be put upon the market there, and sold on a certain day, of which appellant had notice; that there was no further market for cattle at Indianapolis until five days after; that by means of the delay occasioned by the cattle breaking out of the car, the cattle did not arrive in time for the market; that one steer was lost and eight damaged, and appellees suffered loss in the cattle lost and damaged, as well as in their not arriving in time for market. Appellant pleaded the general issue and the case was tried by jury.

We find no sufficient evidence in the record to support the averments in the third and fourth counts, that defendant had notice that appellees intended to sell said cattle upon the market in Indianapolis, and with such notice agreed to carry them to Indianapolis and there deliver them to M. Sells & Co. in time to be put upon the market there and sold on September 23d. The cattle were billed through to the East, as appears by the shipping bills, and appellant undertook to transport them from Montrose to Indianapolis, which was a part of the through trip. They were consigned, care of M. Sells & Co., Indianapolis, but appellant could not, for that reason, have notice they were to be sold there. And we fail to discover from the evidence in the record, actual notice, or facts and circumstances implying notice to appellant, that Indianapolis was the point at which the cattle were to be taken off and sold. It further appears, one car, containing

twenty-two of the cattle, reached that place more than one hour before the cattle market opened on September 23d, and the other car, containing twenty-one cattle, reached that point before the market closed on that day. True, Woodard testified he was there when this last car arrived at eleven o'clock, and "there was not any market then for the cattle, most of the buyers had left the yard at that time," showing there were yet buyers left. Vaughn testified the stock market closed between eleven and twelve o'clock, and although his salesmen were there, yet he did not sell or offer for sale on that day, in the market, any of his cattle. He gives as a reason that Reynolds, stock agent of appellant at Indianapolis, told him "to let the stock go on and sell, and that they would be responsible for the damage done it, and it might be that that was the only thing and the best thing that could be done with the stock." It is not shown that Reynolds had authority to give such direction, or assume such liability for and on behalf of appellant.

The evidence of Vaughn, introduced for the purpose of showing the duties and powers of Reynolds as agent for appellant, is, that his business was "to see after the business of the company. If we wanted a car we would go to him to see about it, and if we wanted to go anywhere we came to him, and if we wanted a pass we went to him." To bind the principal by the acts of the agent, the right and authority to do such acts, as agent, must be proven. It will be observed that the averments referred to set up a specific contract by appellant, to transport and deliver the cattle at a certain place on a day certain, in time to be sold in the market there, and it is for a breach of this contract, and not for an omission to deliver without unreasonable delay, that damages are claimed. Such specific contract was not proven, and had it been, the evidence shows the cattle were all delivered in the stock yards in Indianapolis on September 23d, before the stock market was closed for that day. The evidence, however, supported the averment that defendant furnished a car that proved to be unsafe and insecure. In this car twenty-two of the cattle were loaded, and

shortly after the train started nine of the cattle broke out at the door of the car, the fastenings of which were defective. Eight were recovered in a damaged condition, and one was never found. It is the duty of a railroad company to furnish to shippers safe and secure cars in which to carry freight delivered to it for transportation; an omission to perform this duty is negligence, creating liability to respond in damages to the shipper injured thereby. Conceding the right of appellees to recover for such negligence on the part of appellant, the damages awarded were excessive. The value of the cattle was fixed at $45 each when they reached Indianapolis, and this valuation at Montrose was based upon the market value at Indianapolis, $3.75 per hundred weight, and upon the assumption they averaged 1,200 lbs. each. It was also shown the eight crippled steers were damaged to the extent of half their value. Even upon this theory of valuation the damage to the eight steers lessened their value only $22.50 each, amounting in all to $180, and adding $45, the value of the lost steer, the sum total would be but $225, while the amount recovered was $250. But it was also shown that 1,175 lbs. was the average weight of the forty-four head of cattle, and the cost of transportation and other expenses incurred before the market price could be realized are to be considered, reducing the damage below $225. The second instruction for plaintiff was not justified by the evidence and it was error to give it. On the grounds that excessive damages were recovered, and the erroneous instruction was given, the judgment is reversed and the cause remanded.